

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED
07/01/2015**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 15-33036 |
| THOMAS R. WRIGHT, | § | |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |

## MEMORANDUM OPINION REGARDING DEBTOR'S EXPEDITED MOTION FOR CONTINUATION OF AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(c)(3)(B) AS TO ALL CREDITORS
[Docket No. 9]

### I.  INTRODUCTION

The Court issues this Memorandum Opinion because there is split case law on a key issue in

the dispute at bar.[1] Thomas R. Wright, the debtor in this Chapter 11 case (the "<u>Debtor</u>"), requests

that the automatic stay be extended beyond the 30th day of this case under 11 U.S.C. § 362(c)(3)(B).[2]

Alternatively, the Debtor contends that even if this Court will not extend the stay, the Court's ruling

applies only to him personally and his exempt property, and that the stay will continue to remain in

place as to all non-exempt property (i.e., property of the Chapter 11 estate).  PlainsCapital Bank

("<u>PCB</u>"), which holds liens on two, non-exempt rental properties, contends that if the stay is not

extended beyond the 30th day, then the stay is not extended to all property—both exempt and non-

exempt—and, therefore, PCB can proceed to foreclose on its collateral.

---

[1] This Memorandum Opinion contains this Court's Findings of Fact and Conclusions of Law, which the Court makes pursuant to Bankruptcy Rules 7052 and 9014. To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such.

[2] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.  Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

There has been a plethora of opinions issued on whether a denial of a request to extend the stay applies only to the debtor personally and to his or her exempt property, or whether it also applies to non-exempt property of the estate. The majority of courts have held that denial of a request to extend the stay results in the stay lifting only as to the debtor personally and his or her exempt property, with the stay remaining in effect as to property of the estate (the "Limited View"). *See, e.g., In re Scott-Hood*, 473 B.R. 133, 140 (Bankr. W.D. Tex. 2012); *In re Jumpp*, 356 B.R. 789, 791 n. 3 (B.A.P. 1st Cir. 2006). The minority of courts have held that a denial of a request to extend the stay results in the stay lifting not only as to the debtor personally and his or her exempt property, but also as to property of the estate (the "Expansive View"). *See, e.g., In re Curry*, 362 B.R. 394, 398–402 (Bankr. N.D. Ill. 2007); *In re Reswick*, 446 B.R. 362, 365–73 (B.A.P. 9th Cir. 2011). No appellate court whose rulings bind this Court has issued opinions on this particular legal point, so this Court is left to decide whether to accept the Limited View or the Expansive View. Having now studied numerous opinions on this issue, this Court finds that the arguments articulated in support of the Expansive View to be more persuasive than the arguments in support of the Limited View. Therefore, this Court adopts the Expansive View and concludes that in the case at bar, if this Court denies the Debtor's request to extend the stay, then there will be no stay in place on the 30th day as to any property of the Debtor's Chapter 11 estate.

## II.   PROCEDURAL BACKGROUND

The Debtor initiated the pending Chapter 11 case by filing a petition on June 1, 2015. [Doc. No. 1].[3] The dispute at bar arose as a result of the Debtor, on June 8, 2015, filing an Expedited

---

[3] Any reference to a document number without citation to a case number is a reference to the docket sheet of this pending Chapter 11 case, which bears case number 15-33036. Where this Court references a docket number to case number 15-32000, the reference is to the Debtor's first bankruptcy case (a Chapter 13 filing), and the case number will always be

2

Motion for Continuation of the Automatic Stay Pursuant to 11 U.S.C. § 362(c)(3)(B) (the "Motion"). [Doc. No. 9]. On June 10, 2015, this Court issued an order setting the hearing on the Motion for June 23, 2015. [Doc. No. 10]. On June 17, 2015, PCB filed its objection to the Motion. [Doc. No. 17]. Additionally, on June 22, 2015, Select Portfolio Servicing, Inc. ("SPS"), which holds a lien on the Debtor's homestead, filed an objection to the Motion. [Doc. No. 23]. On June 23, 2015, this Court held a hearing on the Motion. At this hearing, counsel for the Debtor and counsel for SPS announced an agreement into the record. However, no agreement was reached between the Debtor and PCB, and the parties proceeded to introduce exhibits and adduce testimony; the Court then heard closing arguments from counsel and took the matter under advisement. The Court now issues this Memorandum Opinion to explain why it has decided not to extend the stay beyond the 30th day of this case.

### III.   FINDINGS OF FACT

A. **Background of the Debtor**

1. The Debtor was an ophthalmologist until 1985 when he retired from practicing medicine. [PCB Ex. 20, 23:9–14].

2. After retiring from medicine, the Debtor began investing in real estate. [PCB Ex. 20, 32:17–33:4]. According to his Schedule I, the Debtor has two sources of monthly income. One source is cash from his rental properties, and the other is social security. Specifically, according to his Schedule I, the Debtor receives net income of $2,098.00 per month from rental property, and $1,482.00 per month from social security—generating net monthly income of $3,580.00. [PCB Ex. 27]; [Doc. No. 1, p. 26 of 55].

---

cited prior to the docket number wherever reference is made to the Debtor's Chapter 13 case.

3.  The Debtor is married, and his wife is a project manager who "basically runs certain sites of insurance companies." [PCB Ex. 20, 23:15−21]. Her gross monthly income is $10,420.00 and her net monthly income is $5,871.76. [PCB Ex. 27]; [Doc. No. 1, pp. 25 & 26 of 55]. The Debtor and his wife have a prenuptial agreement. [PCB Ex. 20, 23:22−24]; [Debtor's Ex. 11]. This agreement, among other things, purports to shield the assets and earnings of the Debtor's wife from being used to pay the liabilities of the Debtor. [PCB Ex. 20, 23:22−24]; [Debtor's Ex. 11].

## B.  The Debtor's First Bankruptcy Case (a Chapter 13 Case)

4.  On April 7, 2015, at 8:13 A.M., the Debtor, representing himself *pro se*, filed a Chapter 13 petition, and this case was assigned case number 15-32000. [Case No. 15-32000, Doc. No. 1]. The Debtor filed this petition in order to stop PCB from proceeding with a foreclosure sale scheduled on its collateral later in the day. [PCB Ex. 20, 22:1−3].

5.  On the date of the filing of his Chapter 13 case, the Debtor had a total of $107,935.76 in various checking accounts. [Case No. 15-32000, Doc. No. 24]; [PCB Ex. 26, p. 2 of 57].

6.  On April 23, 2015, this Court dismissed his Chapter 13 case without prejudice to refiling because the Debtor had failed to timely file his schedules, statement of financial affairs, and other required documents as required by Rule 1007(c). [Case No. 15-32000, Doc. No. 14].

7.  On May 7, 2015, the Debtor filed a motion to vacate this Court's order dismissing his Chapter 13 case.  [Case No. 15-32000, Doc. No. 17].

8.  On May 26, 2015, this Court entered an order denying the Debtor's motion to vacate order dismissing Debtor's Chapter 13 case (the "May 26 Order"). [Case No. 15-32000, Doc. No. 27].  In the May 26 Order, the Court expressly stated that, ". . . if the Debtor files a second

4

petition and then files a motion to extend the automatic stay under 11 U.S.C. § 362(c), then,

for the Debtor to have any chance of keeping the stay in place beyond the 30th day, he will

need, at a minimum, to provide adequate protection payments to [PCB] and to account for all

rental payments that the Debtor has received since December of 2012." [*Id.* at 3].

9. On May 27, 2015, the Debtor filed an emergency motion to reconsider the May 26 Order. [Case No. 15-32000, Doc. No. 29].

10. On June 1, 2015, at 3:26 P.M., this Court entered its order denying the Debtor's emergency motion to reconsider the May 26 Order. [Case No. 15-32000, Doc. No. 33].

**C. The Debtor's Second Bankruptcy Case (the pending Chapter 11 Case)**

11. On June 1, 2015, at 6:06 P.M.—approximately 2.5 hours after this Court entered its order denying the Debtor's emergency motion to reconsider the May 26 Order—the Debtor filed a Chapter 11 petition, thereby initiating the case presently pending before this Court. [Doc. No. 1]. In this Chapter 11 case, the Debtor is represented by an experienced, board-certified bankruptcy attorney, Reese W. Baker.

12. On the same day, the Debtor filed his schedules and statement of financial affairs. [Doc. No. 1, pp. 6–44 of 55]. As of this date, the Debtor had $99,041.38 in various checking accounts. [PCB Ex. 27]; [Doc. No. 1, p. 7 of 55].

13. On his Schedule A, the Debtor lists his homestead, the address of which is 8210 Frontenac Drive, Houston, Texas 77071 (the "Homestead"). [PCB Ex. 27]; [Doc. No. 1, p. 6 of 55]. The Debtor also exempts the Homestead on his Schedule C. [PCB Ex. 27]; [Doc. No. 1, p. 12 of 55]; [Doc. No. 19]. The Debtor represents that the current value of the Homestead is $311,000.00, and that the lien attached thereto is $342,288.00. [PCB Ex. 27]; [Doc. No. 1, p.

5

6 of 55]; [Doc. No. 19]. According to the Debtor's Schedule D, the pre-petition arrears owed

to SPS total $75,240.00, [PCB Ex. 27]; [Doc. No. 1, p. 17 of 55]—although SPS contends

that the pre-petition arrears are at least $194,987.53, representing 44 months of nonpayment,

[Doc. No. 23, pp. 1 & 3 of 9].

14.   The Debtor also lists three rental properties in his Schedule A.  [PCB Ex. 27]; [Doc. No. 1,

p. 6 of 55].  PCB has a first lien on two of these rental properties: 1808 Wheeler Street,

Houston, Texas (the "Wheeler Property") and 2303 Rosewood Drive, Houston, Texas (the

"Rosewood Property").  [PCB Ex. 27]; [Doc. No. 1, pp. 6 & 15 of 55].  The Wheeler

Property has four tenants and the Rosewood Property has six tenants. [PCB Ex. 20,

25:19−26:5]. The other rental property is located at 3838 Roseneath Drive #5, Houston,

Texas 77021 (the "Roseneath Property"); MidSouth Bank holds a lien on this property.

[PCB Ex. 27]; [Doc. No. 1, pp. 6 & 15 of 55].

15.   According to the Debtor's Schedule A, the lien held by PCB on the Wheeler Property is

$258,954.77, the lien held by PCB on the Rosewood Property is $141,543.15, and the lien

held by MidSouth Bank on the Roseneath Property is $200,830.00. [PCB Ex. 27]; [Doc. No.

1, p. 6 of 55].

16.   Further, according to the Debtor's Schedule A, the Wheeler Property has a fair market value

of $498,000.00, the Rosewood Property has a fair market value of $250,000.00, and the

Roseneath Property has a market value of $475,000.00. [PCB Ex. 27]; [Doc. No. 1, p. 6 of

55].  Thus, according to the Debtor, he has substantial equity in all three of these rental

properties, with the aggregate equity totaling at least $621,672.08.

6

17.  On June 15, 2015, the Debtor entered into a contract to sell the Rosewood Property for the sum of $300,000.00 to Georgia Mei Properties, LLC. [Debtor's Ex. 3]. The Debtor retained a broker, Mr. David Cole, who was helpful in obtaining the contract with Georgia Mei Properties, LLC. [Testimony of Mr. Cole at the H'rg held on June 23, 2015, 1:42:04−1:42:12 P.M.; 1:47:23−1:47:27 P.M.]. Mr. Cole opined that $300,000.00 was a fair and reasonable price to sell the Rosewood Property. [Testimony of Mr. Cole at the H'rg held on June 23, 2015, 1:44:05−1:44:11 P.M.].

18.  The Debtor has retained another real estate broker, Mr. Gerald Womack, to market the Wheeler Property. [Testimony of Mr. Womack at the H'rg held on June 23, 2015, 11:35:39−11:35:47 A.M.]. The Debtor is presently attempting to sell the Wheeler Property for the price of $498,000.00. [Testimony of Mr. Womack at the H'rg held on June 23, 2015, 11:38:55−11:39:04 A.M.]. At present, no contract has been obtained for the sale of the Wheeler Property.

19.  On the Debtor's initial Schedule C, filed on June 1, 2015, the Debtor exempted not only the Homestead, but all three of his rental properties (i.e., the Wheeler Property, the Rosewood Property, and the Roseneath Property). [PCB Ex. 27]; [Doc. No. 1, pp. 12–13 of 55]. However, after PCB filed its objection to the Motion, which argued in paragraph 13 that the Debtor's attempt to exempt these rental properties was done in bad faith, the Debtor filed an amended Schedule C on June 17, 2015 exempting only the Homestead. [Doc. No. 19].

20.  On June 5, 2015, this Court granted PCB's Motion to Prohibit Use of Cash Collateral and For Adequate Protection Payments by entering an order requiring the Debtor to take certain actions (the "Adequate Protection Order"). [Doc. No. 8]. Specifically, the Adequate

Protection Order requires the Debtor to make monthly adequate protection payments to PCB in the amount of $2,000.00 commencing with the June 2015 payment, and also requires the Debtor to deposit and segregate the rents on which PCB has a lien in a separate debtor-in-possession bank account. [*Id.*]. The Adequate Protection Order further prohibits the Debtor from using or spending any of the rents received from the Wheeler Property and the Rosewood Property (other than to pay adequate protection payments to PCB) without first obtaining an order from this Court. [*Id.*].

**D. Background of Litigation in State Court Between the Debtor and PCB that Occurred Prior to the Filing of the Debtor's Chapter 13 Case**

21.  Prior to the filing of the Debtor's first bankruptcy petition, the Debtor and PCB had already been in litigation in state court as a result of the Debtor's filing of a lawsuit against PCB. [PCB Ex. 20, 17:10−12]. In the state court litigation, the Debtor had made multiple requests to enjoin PCB from foreclosing on the Wheeler Property and the Rosewood Property, and each time the state court denied his request. [PCB Ex. 20, 49:4−50:15]. In an attempt to resolve the state court litigation, PCB and the Debtor underwent mediation; however, the mediation was unsuccessful. [*Id.*]

22.  The most recent request made by the Debtor to enjoin PCB from foreclosing on its collateral was denied on April 6, 2015. [PCB Ex. 15]. The state court's denial of this request for an injunction led the Debtor to file his first bankruptcy petition on April 7, 2015, which thereby put the automatic stay into effect and prevented PCB from going forward with its foreclosure sale scheduled for April 7, 2015. [PCB Ex. 20, 34:1−35:3].

**E. History of the Debtor's Payments to PCB and Collection of Rents from Tenants Residing at the Wheeler Property and the Rosewood Property**

23. The Debtor has not made any monthly note payments to PCB since December of 2012.[4] [PCB Ex. 20, 48:20–49:3].

24. During each and every month since January of 2013, the Debtor has collected rents from the tenants who reside at the Wheeler Property and the Rosewood Property, with a total monthly rental collection of approximately $4,535.00. [PCB Ex. 20, 26:21–29:3]. Thus, the total amount of rental payments collected by the Debtor from January of 2013 through the date of the filing of this pending Chapter 11 case (i.e., June 1, 2015) is $131,515.00 (i.e., $4,535.00 x 29 months). During this 29-month period (i.e., from January of 2013 through May of 2015), the Debtor made no payments to PCB. [PCB Ex. 20, 48:20–49:2].

25. On June 11, 2015, counsel for PCB sent a letter to counsel for the Debtor making the following request:

> Also, pursuant to the [Court's June 5, 2015] Order, the Debtor must segregate the income generated by the two apartment complexes that serve as the Bank's collateral, and deposit that income into a separate debtor-in-possession bank account. Please send me a copy of the initial bank statement indicating that the account has been opened and the rents deposited. The account should contain all rents received by the Debtor from May 22, 2015 forward. You will recall that at the May 22nd hearing on the Debtor's motion to vacate the order dismissing the Debtor's first case, the Court verbally ordered the Debtor to begin segregating the rents from that day forward.

[PCB Ex. 22.] The Debtor has failed to provide PCB with a copy of any bank statement indicating that the Debtor has opened the account and that he has deposited the rents that he

---

[4] The Court notes that the Debtor did comply with the Adequate Protection Order by making an adequate protection payment of $2,000.00 to PCB on or about June 5, 2015.

9

has collected.

26.  On the same day, counsel for PCB, in the same letter referred to above, requested counsel

for the Debtor to provide him with dates during the two weeks thereafter so that PCB's

appraiser could inspect the Wheeler Property and Rosewood Property. [*Id.*]. Counsel for the

Debtor never responded to this request, and therefore PCB has never been able to have its

appraiser inspect either of these properties.

## IV. CREDIBILITY OF WITNESSES

At the hearing on the Motion held on June 23, 2015, this Court heard testimony from five

witnesses: (1) Sandy Dasigenis; (2) Jeff Leva; (3) Gerald Womack; (4) David Cole; and (5) the

Debtor.  The Court finds that Ms. Dasigneis, Mr. Leva, Mr. Womack, and Mr. Cole were credible

and the Court gives significant weight to their testimony.  The Court notes, however, that these

witnesses did not give extensive testimony. Rather, most of the testimony came from the Debtor.

The Court finds that the Debtor, for the most part, responded to the questions posed to him,

but sometimes, he gave evasive answers on key points. For example, when counsel for PCB inquired

whether he had ever provided an accounting to PCB, as referenced in the May 26 Order, the Debtor

responded by saying that he gave documents to his attorney—thereby suggesting that he had

provided an accounting and presumably wanting this Court to assume that his attorney had provided

this accounting to PCB's attorney. However, when PCB's attorney pressed the Debtor for an answer

as to whether the Debtor had provided PCB—as opposed to the Debtor's attorney—with an

accounting, the Debtor eventually responded that he had not provided any accounting to PCB.

[Testimony of the Debtor at the H'rg held on June 23, 2015, 3:59:27−4:01:42 P.M.]. Moreover, the

Debtor never stated just exactly what documents he gave to his attorney, so this Court has no way of

10

knowing whether the Debtor actually provided documents that indeed, and in fact, constitute an accounting. Thus, overall, the Court gives some weight to the Debtor's testimony, but does not find the Debtor entirely credible on certain issues about which he testified.

## V.  CONCLUSIONS OF LAW

### A.  Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

#### 1.  Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b).  This dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of this Chapter 11 estate.  Further, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) because it involves the Debtor's request to extend the automatic stay.  Finally, it is core pursuant to the general "catch-all" language of 28 U.S.C. § 157(b)(2).  *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under §157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").

#### 2.  Venue

Venue is proper pursuant to 28 U.S.C. § 1408(1) because the Debtor's primary assets are located in Harris County, Houston, Texas, and this county is part of the Southern District of Texas.

3.      Constitutional Authority to Enter a Final Order

In the wake of the Supreme Court's issuance of its opinion in *Stern v. Marshall*, 131 S. Ct.

2594 (2011), this Court is required to determine whether it has the constitutional authority to enter a

final order in any dispute brought before it. In *Stern*, which involved a core proceeding brought by

the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked

the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved

in the process of ruling on a creditor's proof of claim." *Id.* at 2620. The pending dispute before this

Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G). Because *Stern* is replete

with language emphasizing that the ruling is limited to the one specific type of core proceeding

involved in that dispute, this Court concludes that the limitation imposed by *Stern* does not prohibit

this Court from entering a final order here. A core proceeding under § 157(b)(2)(A) and (G) is

entirely different than a core proceeding under § 157(b)(2)(C). *See, e.g.*, *Badami v. Sears (In re AFY,*

*Inc.)*, 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other

provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of

the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional.");

*see also In re Davis*, 538 F. App'x 440, 443 (5th Cir. 2013), *cert. denied sub nom*, *Tanguy v. W.*, 134

S.Ct. 1002 (2014) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to

'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides

that its limited holding applies only in that 'one isolated respect.' We decline to extend *Stern*'s

limited holding herein.") (internal citation omitted).

Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under

§ 157(b)(2), *see In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 n.12 (5th Cir. 2013)

12

("*Stern*'s 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) . . ."), this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order in the dispute at bar. In *Stern*, the debtor filed a counterclaim based *solely* on state law; whereas, here, the Motion is based solely on an express Code provision, § 362(c)(3), and judicially-created bankruptcy law interpreting this provision; there is no state law involved in this Court's resolution of this dispute. This Court is therefore constitutionally authorized to enter a final order on the Motion. *See In re Airhart*, 473 B.R. 178, 181 (Bankr. S.D. Tex. 2012) (noting that the court has constitutional authority to enter a final order when the dispute is based upon an express provision of the Code and no state law is involved).

Moreover, this Court has the constitutional authority to enter a final order because all of the parties in this contested matter have consented, impliedly if not explicitly, to adjudication by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (May 26, 2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be express. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be expressed. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . ."). Specifically, both the Debtor and PCB filed pleadings in this Court and then adduced testimony, introduced exhibits, made closing arguments, and then filed post-hearing briefs. At no time did they object to this Court's constitutional authority to enter a final order on the Motion. Thus, to the extent that entering an order denying the Motion constitutes entering a final order, this Court holds that the parties have, by their actions, consented to this Court's constitutional authority to enter a final order.

13

**B.    Section 362(c)(3) Governs the Dispute at Bar**

There is no question that § 362(c)(3) governs this dispute. That is one major point on which both the Debtor and PCB agree.

1.    <u>Three Subsections of this Provision Apply to this Dispute</u>

There are three subsections of § 362(c)(3) that govern the dispute at bar: (c)(3)(A), (c)(3)(B), and (c)(3)(C). First, § 362(c)(3)(A) sets forth that if a debtor files a case within one year after a prior case was dismissed, then in the second case, the automatic stay will terminate on the 30th day. In the case at bar, the Debtor filed his second case (i.e., the pending Chapter 11 case) on June 1, 2015, [Finding of Fact No. 11]—which was within one year after the dismissal of his first case. [Finding of Fact No. 6]. Thus, in the pending Chapter 11 case, the automatic stay will terminate 30 days after June 1, 2015—i.e., on July 1, 2015.

However, § 362(c)(3)(B) provides for the continuation of the stay beyond the 30-day period if four requirements are met: (1) a motion to extend the stay is filed; (2) there is notice and a hearing; (3) the notice and hearing are completed before the expiration of the original 30-day stay period; and (4) the debtor proves that the filing of the second case "is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B). *In re Collins*, 335 B.R. 646, 650 (Bankr. S.D. Tex. 2005). In the case at bar, the Debtor filed the Motion on June 8, 2015, [Doc. No. 9]—which was one week after he filed the petition initiating this Chapter 11 case, [Finding of Fact No. 11]; this Court issued an order on June 10, 2015 setting the hearing on the Motion for June 23, 2015, which was then transmitted to the appropriate creditors and parties-in-interest, including PCB's attorney, [Doc. No. 10]. On June 23, 2015, this Court held a hearing on the Motion. [Hr'g Minutes on Docket Sheet for June 23, 2015]. Thus, requirements one, two, and three are satisfied. The analysis must therefore now focus

14

on the fourth requirement: whether the filing of this Chapter 11 case "is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B). Here, the Debtor requests this Court to extend the stay as to all creditors, [Doc. No. 9, pp. 2 & 3], so this Court must focus on whether the filing of this Chapter 11 case is in good faith as to these creditors, including PCB.[5]

However, before addressing this issue under § 362(c)(3)(B), this Court, pursuant to § 362(c)(3)(C), must determine whether a rebuttable presumption arises that the pending Chapter 11 case was not filed in good faith. If either subparagraph (i) or (ii) of § 362(c)(3)(C) is satisfied, then it is presumed that this Chapter 11 case was not filed in good faith, and the Debtor's burden becomes more onerous with respect to satisfying the fourth requirement: specifically, the Debtor's burden increases from one of "preponderance of the evidence" to one of "clear and convincing evidence." 11 U.S.C. § 362(c)(3)(C); *see e.g.*, *In re Collins*, 335 B.R. at 650–51. Subparagraph (ii) of § 362(c)(3)(C) is inapplicable given the facts in the case at bar, so this Court focuses on subparagraph (i).

Section 362(c)(3)(C)(i)(II)(aa) is applicable here. This subsection, in pertinent part, sets forth that the Debtor's burden under § 362(c)(3)(B) increases from one of preponderance of the evidence to one of clear and convincing evidence when "a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to . . . file . . . documents as required by this title or the court without substantial excuse." 11 U.S.C. § 362(c)(3)(C)(i)(II)(aa). Here, the Debtor's first case (i.e., his Chapter 13 case) was filed on April 7, 2015, [Finding of Fact No. 4]; it was dismissed on April 23, 2015 because of the Debtor's failure to

---

[5] But not SPS, who has agreed to an extension of the stay pursuant to the announcement made at the hearing held on the Motion on June 23, 2015.

timely file his schedules, statement of financial affairs, and other documents, [Finding of Fact No. 6];[6] and the Debtor then filed his second bankruptcy petition (initiating the pending Chapter 11 case) on June 1, 2015, [Finding of Fact No. 11]—which is certainly within one year of the dismissal of the Debtor's Chapter 13 case. Therefore, the Court finds that there is now a rebuttable presumption that the pending Chapter 11 case was not filed in good faith, and the Debtor may only rebut this presumption by clear and convincing evidence. *In re Collins*, 335 B.R. at 652. "Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004). "Thus, the scope of review for good faith [with respect to the fourth requirement of § 362(c)(3)(B)] expands while the burden on [the Debtor] increases." *In re Collins*, 335 B.R. at 652. Hence, this Court must now analyze whether the Debtor has proven, by clear and convincing evidence, that he filed this pending Chapter 11 case "in good faith as to the creditors to be stayed"—i.e., PCB and all other creditors except SPS.

---

[6] The Debtor cannot establish that he had a substantial excuse for failing to file the required documents. Section 362(c)(3)(C)(i)(II)(aa) expressly states that "mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney." At the time that the Debtor failed to timely file his schedules, statement of financial affairs, and other documents in his Chapter 13 case, he was not represented by an attorney, but rather was representing himself *pro se*. [Finding of Fact No. 4]. Thus, the Debtor cannot point to any failure by an attorney at that time to prove "substantial excuse" under this Code provision. Nor, for that matter, has the Debtor provided any evidence that convinces this Court that he had a "substantial excuse" for failing to timely file his schedules, statement of financial affairs, and other required documents in his Chapter 13 case. As a party representing himself *pro se* in his Chapter 13 case, the Debtor was charged with knowing and complying with the law. *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988) ("[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law."). He therefore cannot use his *pro se* status as the basis for demonstrating "substantial excuse" for failing to timely file his schedules, statement of financial affairs, and other required documents in

2.      Analysis of the Fourth Requirement of § 362(c)(3)(B)

Another bankruptcy judge in this district, the Honorable Marvin Isgur, has articulated various

factors for considering good faith under § 362(c)(3).  *In re Charles*, 334 B.R. 207, 219–23 (Bankr.

S.D. Tex. 2005).  The undersigned judge agrees that these factors are appropriate in assessing

whether a debtor can establish, by clear and convincing evidence, that his pending case is filed in

good faith.  The factors are as follows:

> 1) Does the creditor against whom the extension of the stay is sought agree to the stay extension?
> 2) Is it likely that the debtor will obtain a discharge in the pending case?
> 3) What is the nature of the debt held by the creditor?
> 4) What is the nature of the collateral held by the creditor?
> 5) Has the debtor made any purchases on the eve of bankruptcy?
> 6) What has been the debtor's conduct in the pending case?
> 7) What are the reasons why the debtor wants to extend the automatic stay?; and
> 8) Are there any unique facts or circumstances particular to the pending case?

3.      A Review of the 8 Factors in the Dispute at Bar Results in a Denial of the Motion

As indicated in *Charles*, the first two factors are threshold factors.  *See id.* at 219.  A finding

that the creditor, against whom the extension of the stay is sought, agrees to a stay extension ends the

"good faith" inquiry.  Further, a finding that the pending case is unlikely to result in the debtor

receiving a discharge means that the case fails an objective good faith standard and ends the inquiry,

resulting in a finding that the debtor's filing is not in good faith.  If neither of the first two factors

ends the inquiry, then the remaining six factors should be considered under the totality of the

circumstances in order to determine if the case is filed in good faith under the "clear and convincing

evidence" standard.  *In re Collins*, 335 B.R. at 653.

---

his Chapter 13 case.

17

Application of the above-referenced factors to the Debtor's pending Chapter 11 case results in the following analysis. With respect to the first factor, only SPS has agreed to an extension of the stay. No other creditor has agreed to an extension, and PCB vigorously objects to the extension; therefore, this Court must continue the inquiry. With respect to the second factor, this Court finds that it is fairly likely that the Debtor will obtain a discharge in this case. The Debtor appears to have substantial equity in the Wheeler Property and the Rosewood Property, [Findings of Fact Nos. 15 & 16]—as well as in the Roseneath Property on which MidSouth Bank has a lien, [Id.]; whereas, the Debtor has only $3,600.00 of unsecured priority claims and only $36,736.00 of general unsecured claims, [PCB Ex. 27]; [Doc. No. 1, pp. 20–22 of 55]. Thus, the Debtor might be able to obtain confirmation of a liquidating plan—indeed, the Debtor has already obtained a contract for the Rosewood Property and has a broker presently marketing the Wheeler Property, [Findings of Fact Nos. 17 & 18]—which would eventually result in the Debtor obtaining a discharge. Moreover, the Debtor receives social security payments of $1,482.00 per month and has a wife who generates monthly net income of $5,871.76.[7] [Findings of Fact Nos. 2 & 3]. Under these circumstances, it is quite possible that the Debtor could obtain confirmation of a plan of reorganization, and—assuming that he actually made all plan payments—would eventually obtain a discharge. Accordingly, once

---

[7] The Debtor's Schedule I reflects that he earns net income of $2,098.00 per month from his rental properties, but his testimony is that he derives income from his properties by *selling* them, not by collecting rents. [PCB Ex. 20, 32:17–33:4]. Indeed, on cross-examination, the Debtor testified that the monthly expenses associated with the maintenance and upkeep of the rental properties exceeds the monthly rental collections by approximately $1,241.00. [Testimony of the Debtor at the H'rg held on June 23, 2015, 3:09:49–3:10:40 P.M.]. Thus, there is a contradiction between the Debtor's testimony that he has a monthly net loss of $1,241.00 from the rental properties with his representation on his Schedule I that he has monthly net income of $2,098.00 from the rental properties. Given this contradiction, this Court refers solely to the Debtor's monthly social security income and his equity in his rental properties in evaluating whether the Debtor can obtain a discharge in this Chapter 11 case. Additionally, it is not clear to this Court whether the Debtor's wife would help fund any plan payments. The prenuptial agreement between the Debtor and his wife suggests that she would not, [Finding of Fact No. 3]; however, during his closing argument, counsel for the Debtor suggested that she might.

18

again relying upon *Charles*, because this Court finds that this case is likely to result in a discharge, this Court must continue the "good faith" inquiry—which means the Court must now consider factors 3 through 8 under the totality of the circumstances. *Charles*, 334 B.R. at 219. ("However, upon a showing that the new case has a reasonable probability of success, the Court continues the analysis and considers the totality of the circumstances in determining whether subjective good faith exists under § 362(c)(3).").

With respect to the third factor, the nature of the debt held by PCB is straightforward. PCB holds promissory notes on the Wheeler Property and on the Rosewood Property. While the Debtor disputes the amount he owes PCB under these notes, [PCB Ex. 27]; [Doc. No. 1, p. 16 of 55], this Court, at least based upon the record made so far—with one eye constantly cocked on the "clear and convincing evidence" standard—is unpersuaded by the Debtor that his debt figures are correct. However, even if the Debtor is correct—i.e., that he owes less to PCB than the amount claimed by PCB—the Debtor nevertheless does not deny that he owes *some* amount under these two promissory notes to PCB. [PCB Ex. 20, 13:7–15].[8] Nor does the Debtor deny that he failed to make any payments to PCB for more than 15 months prior to the filing of his first bankruptcy case. [PCB Ex. 20, 29:4–7]. According to the Debtor, he had not made a payment since December of 2013. [*Id.*]. According to PCB, the Debtor has not made a payment since December of 2012—i.e., more than 27 months prior to the filing of his first bankruptcy case. [Finding of Fact No. 23]. And, during all this

---

[8] The Debtor testified that according to his calculation, he believes he owes approximately $170,000.00 on the note secured by the Wheeler Property and "somewhere between $70-80,000" under the note secured by the Rosewood Property. PCB asserts that as of April 7, 2015, the Debtor owes $217,325.50 (excluding attorneys' fees and costs) on the note secured by the Wheeler Property and $119,085.04 (excluding attorneys' fees and costs) on the note secured by the Rosewood Property. [PCB Ex. 20, 53:9–54:2]. Thus, the Debtor believes that the aggregate amount that he owes to PCB is $240,000.00-$250,000.00; whereas PCB believes that the aggregate amount the Debtor owes is $336,410.54 (excluding attorneys' fees and costs).

time, the Debtor was collecting and pocketing the sum of $4,535.00 of monthly rents from his tenants residing at the Wheeler Property and the Rosewood Property. [Finding of Fact No. 24]. The Debtor did not set these proceeds aside in a separate account pending resolution of any dispute that he has with PCB over the exact amount that he owes to PCB under the promissory notes; rather, according to his own testimony, he has spent these monies on keeping insurance on these properties in effect and providing maintenance and upkeep on them as well. [Testimony of the Debtor at the H'rg held on June 23, 2015, 4:07:59–4:08:20 P.M.]. Yet, he provided no accounting whatsoever. Thus, the Debtor collected and pocketed thousands of dollars of rental proceeds without providing any documentation as to how he spent these proceeds. Under these circumstances, this third factor weighs against extending the stay.

With respect to the fourth factor, the nature of the collateral held by PCB is also straightforward. PCB has liens on rental properties located in Houston, Harris County, Texas—i.e., the Wheeler Property and the Rosewood Property. [Finding of Fact No. 14]. Moreover, according to the deeds of trust and assignments of rents held by PCB, [see PCB Exs. 3, 4, 6, 9 & 10], PCB has a lien not only on the real estate itself, but also on all of the rents paid by tenants. Yet, despite this security interest, the Debtor, as noted in the paragraph immediately above, was, prior to filing his Chapter 13 petition, collecting and pocketing the rents for over at least 15 months without (a) paying a dime to PCB; (b) setting aside the rental payments in an interest-bearing account until his dispute with PCB over the exact amount that he owes is resolved; or (c) providing an accounting to PCB as to what exactly he was doing with the rental payments that he collected from the tenants. Under these circumstances, this fourth factor weighs against extending the stay.

With respect to the fifth factor, there is no evidence of a specific purchase that the Debtor made on the eve of the filing of this pending Chapter 11 case. However, there is evidence that the Debtor made a substantial purchase or purchases. On the Debtor's amended Schedule B, filed on May 21, 2015 in his Chapter 13 case, the Debtor represented to his creditors and to this Court that he had $107,935.76 in his bank accounts. [Finding of Fact No. 5]. Yet, in his Schedule B filed on June 1, 2015 in this pending Chapter 11 case, the Debtor represented to his creditors and to this Court that he had $99,041.38 in his bank accounts. [Finding of Fact No. 12]. Thus, just prior to the filing of the petition initiating this pending case, the Debtor spent $8,894.32. Given the fact that the Debtor, by his own admission, had made no payments to PCB for over 15 months prior to the filing of his first bankruptcy petition, and also taking into account that the Debtor is in substantial arrears on his homestead note to SPS, [Finding of Fact No. 13], the Debtor's expenditure of $8,894.32 on the eve of the filing of his Chapter 11 petition is very disconcerting—particularly given the fact that it is the Debtor's burden to prove, by clear and convincing evidence, that he filed this Chapter 11 case in good faith. Under these circumstances, this fifth factor weighs against extending the stay.

With respect to the sixth factor, the Debtor's conduct in this pending case has not been exemplary in several respects. In the May 26 Order (issued in the Debtor's Chapter 13 case), the Court stated that, "[g]iven the amount of court time spent at the hearing on May 22, 2015, the Court wants the Debtor to know that if the Debtor files a second petition and then files a motion to extend the automatic stay under 11 U.S.C. § 362(c), then, for the Debtor to have any chance of keeping the stay in place beyond the 30th day, he will need, at a minimum, to provide adequate protection payments to [PCB] *and to account for all rental payments that the Debtor has received since*

21

*December of 2012.*" (emphasis added). [Finding of Fact No. 8]. Yet, at the hearing on the Motion

held on June 23, 2015, this Court learned that PCB had received no accounting from the Debtor as to

how he had spent the rental payments that he has been collecting since December of 2012. The

Debtor testified that he had spent these funds on keeping insurance in place on the rental properties

as well as maintaining these properties, [Testimony of the Debtor at the H'rg held on June 23, 2015,

4:07:59–4:08:20 P.M.], but an accounting requires producing documentation evidencing the specific

amounts of the payments made, to whom they were made, and for what purpose—in effect,

producing invoices and copies of checks used to pay those invoices.[9] *See e.g.*, *State of Kansas v.*

*Lundemuth*, 281 P.3d 534, 536–37 (Kan. Ct. App. 2011) (holding that the term "accounting" is

synonymous with the term "invoice"). Indeed, the Debtor collected rents between January of 2013

and May of 2015 totaling $131,515.00, [Finding of Fact No. 24]—a substantial amount—and it is

unacceptable to this Court that the Debtor has provided no written documentation evidencing the

amount of rental proceeds that he has used to keep insurance in place and to maintain the Wheeler

Property and the Rosewood Property.

Second, the Debtor's conduct towards PCB has been unbecoming given his status as a

debtor-in-possession. Once he filed his Chapter 11 petition, the Debtor took on a fiduciary duty

towards all of his creditors, including PCB. *Wolf v. Weinstein*, 372 U.S. 633, 649–50 (1963);

*Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 249–50 (5th Cir. 1988). Ten days

---

[9] The Debtor testified that he has provided no documents directly to PCB, but that he has provided documents to his counsel of record, Reese W. Baker. [Testimony of the Debtor at the H'rg held on June 23, 2015, 3:59:27–4:01:42 P.M.]. However, at the hearing on the Motion held on June 23, 2015, counsel for PCB informed the Court that he had not received any such documentation from Mr. Baker, and Mr. Baker did not dispute this representation. Under these circumstances, the Court finds that the Debtor, in this pending Chapter 11 case, has not provided the accounting referenced in the May 26 Order.

after the Debtor filed his petition, PCB, through its counsel, made a request to the Debtor, through the Debtor's counsel, to provide a copy of the initial bank statement evidencing that the Debtor had opened up a debtor-in-possession bank account, as referenced in the Adequate Protection Order. [Finding of Fact No. 25]. Additionally, counsel for PCB requested counsel for the Debtor to provide him with dates during the two weeks following the request (which was made on June 11, 2015) so that PCB's appraisal could inspect the Wheeler Property and the Rosewood Property. [Finding of Fact No. 26]. Both of these requests were eminently reasonable for any secured creditor in a Chapter 11 case to make of the debtor. Yet, here, PCB received no response. The Debtor's silence was deafening—and his silence reflects a breach of his fiduciary duty to PCB.[10]

Third, in his initial Schedule C, filed on June 1, 2015, the Debtor had the gumption to claim as exempt property not only the Homestead (on which PCB does not have a lien), but also all three of his rental properties (on two of which PCB does have liens). There is absolutely no basis under Texas law to claim any of these rental properties as exempt. The Debtor only amended Schedule C to delete his claim of exemption on the rental properties after PCB made note of these shenanigans in its objection to the Motion. [Doc. No. 17, ¶13]. Under all of these circumstances, this sixth factor weighs against extending the stay.

With respect to the seventh factor, the Debtor testified that he wants to extend the automatic stay because he has substantial equity in the Wheeler Property and the Rosewood Property, and he wants to sell these properties and use the sale proceeds not only to pay off the debt owed to PCB, but

---

[10] To the extent that the Debtor takes the position that he did not know that his attorney failed to respond to PCB's attorney, the Debtor cannot escape the consequences of his own attorney's conduct to respond. "[The Debtor] voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Pioneer v. Brunswick*, 507 U.S. 380, 397 (1993).

to pay off all of his other debts. [Testimony of the Debtor at the H'rg held on June 23, 2015, 2:36:01−2:36:35 P.M.]. The Debtor emphasized in his testimony that his rental properties comprise the major percentage of his assets, and that if PCB is allowed to foreclose on the Wheeler Property and the Rosewood Property, he will be unable to completely pay off all of his other debts. [Doc. No. 25, 2¶10]. This factor therefore weighs in favor of extending the stay.

With respect to the eighth factor, there are indeed unique facts and circumstances particular to this case, none of which are favorable to the Debtor. First, he is a highly educated individual, having practiced ophthalmology prior to retiring several years ago, at which time he went into the real estate investment business. [Findings of Fact Nos. 1 & 2]. As a highly educated person, who clearly is also a sophisticated businessman, the Debtor ought to know better than to collect rents and then fail to pay PCB, or, alternatively, to at least deposit the rents into an interest-bearing account pending the resolution of any dispute he has with PCB. Second, prior to filing his two bankruptcy petitions this year, the Debtor repeatedly and unsuccessfully attempted to obtain an injunction against PCB in state court to prevent PCB from foreclosing on the Wheeler Property and the Rosewood Property. [Findings of Fact Nos. 21 & 22]. Thus, it should now come as no surprise to the Debtor that the Wheeler Property and the Rosewood Property could soon be foreclosed upon. Indeed, the Debtor's lack of success in state court prior to his bankruptcy filings should have led him to conclude that, at a minimum, he now needs to: (a) collect and deposit the monthly rental payments in a separate interest-bearing account; and (b) provide an accounting of these deposits to PCB. Yet, he still has not done the latter despite this Court's May 26 Order. [*See* Finding of Fact No. 8]. Third, the Debtor, under cross examination by PCB's counsel, admitted that the monthly expenses associated with the upkeep and insurance of the Wheeler Property and the Rosewood Property exceed the

monthly revenues by approximately $1,241.00. [Testimony of the Debtor at the H'rg held on June 23, 2015, 3:09:49−3:10:40 P.M.]. Thus, these two properties are not producing positive cash flow and therefore are not as valuable as the Debtor wants this Court to believe. Under all of these circumstances, the eighth factor weighs against extending the stay.

In sum, factors 3, 4, 5, 6, and 8 weigh against extending the stay, and only factor 7 weighs in favor. Keeping in mind that it is the Debtor's burden, by clear and convincing evidence, to demonstrate that he filed this Chapter 11 case in good faith, this Court finds that the Debtor has failed to meet his burden. Accordingly, this Court finds that the Motion must be denied, and that therefore the stay must terminate upon the 30th day after the Debtor filed the petition initiating this Chapter 11 case. Thus, because the Debtor initiated this pending Chapter 11 case on June 1, 2015, [Finding of Fact No. 11], the stay will terminate on July 1, 2015.

> 4. **Even if the Debtor Could Establish that He Filed this Chapter 11 Case in Good Faith, this Court is Not Required to Extend the Stay Beyond the 30th Day**

In *Charles*, Judge Marvin Isgur made an important point about § 362(c)(3)(B):

> Although a debtor's good faith may authorize the extension of the stay, the statute does not mandate that the Court grant relief upon such a showing. 11 U.S.C. § 362(c)(3)(B). Instead, the statute provides that "the court *may* extend the stay in particular cases as to any or all creditors" once the requirements of § 362(c)(3)(B) are satisfied. The discretion arises from the statute's use of the word "may" rather than "shall" when setting forth whether the relief should be granted. As set forth in *Jama,* "may" customarily connotes discretion.

*Charles*, 334 B.R. at 223 (citations omitted).

This Court agrees with Judge Isgur's interpretation of the statute. Thus, even if a debtor can prove, by clear and convincing evidence, that his or her case is filed in good faith, the Court is not required to extend the stay. The Court has the discretion to extend the stay—or to decline to extend

the stay.

In the case at bar, even if the Debtor could prove that he filed this case in good faith, this Court, in its discretion, would still decline to extend the stay beyond the 30th day. This Court takes this position for four reasons. First, this Court is disturbed by the amount of cash that the Debtor has hoarded since January of 2013. Not only did he not pay a dime to PCB for 29 months, [Finding of Fact No. 24], but he also has not made payments for many months on the Homestead note—as evidenced by the Debtor's own admission in his Schedule D that arrearages to SPS are $75,240.00. [Finding of Fact No. 13]. The Debtor has wholly failed to explain to this Court why he is in default to SPS on the note secured by the Homestead. Meanwhile, the Debtor has been collecting monthly rents in excess of $4,500.00, and his wife and he have been comfortably residing in the Homestead, which the Debtor values in excess of $300,000.00. [*Id.*]. In short, it appears as if the Debtor "wants to have his cake and eat it too." He wants to live the good life without paying for it.

Second, the Court notes that the Debtor's Schedule D reflects that he owes past due property taxes on the Rosewood Property in the amount of $2,539.00 and past due property taxes on the Wheeler Property in the amount of $9,206.00. [PCB Ex. 27]; [Doc. No. 1, p. 15 of 55]. If these properties are really as important to the Debtor as he has testified, then he most definitely should have timely paid the taxes to the appropriate taxing authorities. The Debtor's collection of monthly rental payments from these two properties of $4,535.00 for the past 29 months without paying a dime to PCB, [Findings of Fact Nos. 23 & 24], together with the fact that the balances of his bank accounts exceed $99,000.00, [Finding of Fact No. 12], underscore that he has had more than enough cash to make these tax payments, and there is nothing in the record that shows making these payments would somehow undermine any of the claims that he alleges against PCB. The Debtor's

26

failure to keep taxes current on these properties leads this Court to question just exactly what his motives are. After all, a failure to pay real property taxes in Texas automatically places liens on the properties, *In re Pointer*, 952 F.2d 82, 83 (5th Cir. 1992), and puts them in jeopardy of being foreclosed upon to the detriment of all of the Debtor's creditors—i.e., the same creditors whom the Debtor testified he wants to pay in full through the sale of these properties, [Testimony of the Debtor at the H'rg held on June 23, 2015, 2:36:01–2:36:35 P.M.].

Third, it is disconcerting to this Court that the Debtor has *no written leases with any of his tenants*. [PCB Ex. 20, 26:6–17]. This fact, combined with the fact that the Debtor has not provided a written accounting to PCB about his collection and use of the rents since January of 2013, [Testimony of the Debtor at the H'rg held on June 23, 2015, 3:59:27–4:01:42 P.M.], is simply unacceptable to this Court. It is *not* in the ordinary course of the apartment leasing business to allow tenants to lease valuable property without executing a written lease agreement. And, the Debtor, as well the real estate brokers who testified on his behalf, have made it abundantly clear that these rental properties are valuable. The complete absence of any documentation to evidence the leases and the rentals associated therewith causes this Court to have pause: there is no way to test the Debtor's testamentary assurances in open court about the amounts of the rental payments that tenants residing in the Wheeler Property and the Rosewood Property are required to make against written proof of the amount of these monthly rental payments and the Debtor's collection of these obligations.

Fourth, this Court is not enamored with the Debtor playing a "shell game" with his exemptions. As already noted, the Debtor's initial Schedule C attempted to exempt not only the Homestead, but also the three rental properties under the Texas Property Code. [Finding of Fact No. 19]. Yet, there is no basis under Texas law to exempt the rental properties. The Court finds that the

Debtor made this initial exemption in the hope that no creditor would lodge an objection thereto prior to the deadline for objecting to exemptions. The Debtor was no doubt attempting to benefit from the noteworthy holding of the Supreme Court in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), that a failure to timely object to an exemption forever bars any late-filed objection—even if that exemption has no basis at law—and makes the property exempt for all purposes. Thus, here, the Debtor was hoping to exempt all of the equity that he believes he has in the rental properties; stated differently, he was hoping to avoid having to use this equity to pay any creditors other than the lienholders on these properties. Yet, when PCB, in its objection to the Motion, pointed out that the Debtor was acting in bad faith by attempting to exempt the rental properties, [Doc. No. 17, 7¶13], the Debtor—prior to the hearing on the Motion on June 23, 2015—filed an amended Schedule C to delete the rental properties from being claimed as exempt, [Doc. No. 19]. The Debtor then tried to convince this Court at the hearing that it is his intention to sell one or more of the rental properties and use the equity to pay all of his creditors. [Testimony of the Debtor at the H'rg held on June 23, 2015, 2:36:01–2:36:35 P.M.]. The Debtor's initial attempt to exempt these rental properties casts doubt on the sincerity of his testimony that he really intends to use the equity from the rental properties to pay all of his debts.

In sum, based upon the four reasons discussed above, even if the Debtor could, by clear and convincing evidence, prove that he filed this Chapter 11 case in good faith—and he has not done so—this Court would nevertheless decline to exercise its discretion under § 362 (c)(3)(B) to extend the stay beyond the 30th day. The Debtor has not been completely transparent about his business transactions and he has not been consistent about his intentions to pay all of his creditors.

28

**C.     The Stay will Terminate Not Only as to the Debtor and All of his Exempt Property, but also as to All Property of the Debtor's Chapter 11 Estate.**

As noted at the beginning of this Opinion, the Debtor contends that even if this Court does not extend the stay beyond the 30th day, this ruling applies only to the Debtor personally and to his exempt property, and not to the property of the estate such as the Wheeler Property and the Rosewood Property. According to the Debtor, the stay continues in effect as to these two properties and all other property of his Chapter 11 estate. PCB disagrees and asserts that this Court's decision to deny the Motion means that there is no automatic stay in place as to the Debtor personally or as to any property of the estate, including the Wheeler Property and the Rosewood Property. This Court agrees with PCB.

This Court does not need to review all of the arguments that have been made in numerous opinions on this issue. Rather, this Court simply notes that it finds the arguments set forth in *Curry* and *Reswick* to be compelling, and therefore adopts the Expansive View. *See In re Curry*, 362 B.R. at 398–402; *In re Reswick*, 446 B.R. at 365–73. Accordingly, this Court concludes that by denying the relief requested by the Debtor in the case at bar, there will be no stay as of July 1, 2015 preventing PCB from foreclosing on the Wheeler Property and the Rosewood Property.

## VI.     CONCLUSION

Bankruptcy is a very deadline-oriented area of the law. The Code and the Rules impose numerous—and sometimes tight—deadlines. Debtors need to move with alacrity to comply with these provisions. When the Debtor, in his first bankruptcy case, failed to timely file his schedules and statement of financial affairs and other documents, this Court dismissed his case. [Finding of Fact No. 6]. And, because of this dismissal, when the Debtor filed his second bankruptcy petition to

29

initiate the pending Chapter 11 case, he was saddled with having to affirmatively obtain an extension

of the stay beyond the 30th day of this case by proving, with clear and convincing evidence, that he

filed this pending case in good faith. He has been unable to satisfy this very high burden—in part

because he failed to move swiftly after the issuance of the May 26 Order to provide PCB with

documentation showing specifically how he spent the rental proceeds that he collected from January

of 2013 through May of 2015. Thus, the stay will not be extended beyond the 30th day of this

Chapter 11 case.

This Court's decision not to extend the stay, however, does not necessarily prevent the

Debtor from achieving his stated objective of paying off all of his debts through selling his rental

properties. *If the Debtor moves swiftly, he can still accomplish this goal.* Keeping in mind that

PCB, even after the stay lifts on July 1, 2015, will still need time to comply with applicable Texas

law to foreclose on the Wheeler Property and the Rosewood Property, *see* Tex. Prop. Code § 51.002,

the Debtor can still—prior to any foreclosure sale—sell these properties and generate proceeds

sufficient to pay off not only PCB, but all other creditors. Indeed, the Debtor has already obtained a

contract on the Rosewood Property for $300,000.00, [Finding of Fact No. 17], and this Court has

stated on the record that it will hold an expedited hearing on any motion that the Debtor files to sell

this property pursuant to this contract. Additionally, or alternatively, the Debtor can quickly file a

joint disclosure statement and plan (which can propose to restructure the obligation owed to PCB if it

has not foreclosed on the collateral by the day of the confirmation hearing); and this Court can hold a

simultaneous hearing on the disclosure statement and the plan.

In sum, the Debtor may be down, but he is not out—at least not yet. But, he must move quickly. And, he must remember to continue complying with all of this Court's existing orders—including the Adequate Protection Order. [Finding of Fact No. 20].

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

Signed on this 1st day of July, 2015.

_____
Jeff Bohm
United States Bankruptcy Judge